14 So.2d 4

MADDOX et al. v. BUTCHEE et al.

No. 36805.

May 17, 1943.

See, also, 201 La. 876, 10 So.2d 687.

Emmet Alpha, of New Orleans, for plaintiffs-appellants.

Percy C. Smith, of Oakdale, for defendants-appellees.

PONDER, Justice.

In this suit, the plaintiffs, Wesley W. Maddox, David Tilley, for the use and benefit of his minor daughter, Johnnie Tilley, and J. C. Nance, trustee, seek to annul a judgment ordering the sale of property belonging to the succession of Mrs. Bella Butchee Maddox to effect a partition by licitation and to enjoin the sheriff from selling the property. At the time the suit was filed, the lower court granted the plaintiffs a temporary restraining order and ordered a rule nisi to issue, commanding the defendants to show cause why a preliminary injunction should not be granted. The temporary restraining order expired by limitation. The defendants interposed a plea of estoppel; a plea of prescription; exceptions of no right and no cause of action and answered the suit on its merits. On the date the rule nisi was to be heard, December 12, 1941, the trial was continued to a future date by consent of the parties. On motion of counsel for the plaintiffs, the case was set for trial on the merits for February 10, 1942, see transcript, page 20. The minutes of the trial court show that on February 10, 1942, the case was called for trial on the merits, pursuant to the previous fixing. The exceptions and pleas were referred to the merits. On trial of the merits, the lower court gave judgment, dismissing the plaintiffs' demands and dismissing the rule for injunction. The plaintiffs have appealed.

Dr. J. E. Hawkins and Bella Butchee were married sometime prior to the year 1900, no children being born of this marriage. Dr. Hawkins was the father of two children by a former marriage. Dr. Hawkins died in October, 1908. After his death, there was some litigation between his heirs and his surviving widow, Mrs. Bella Butchee Hawkins. This litigation was settled by a compromise agreement and an act of partition in kind, and the

suit was dismissed. In the act of partition, Mrs. Bella Butchee Hawkins became the owner of several tracts of land located in the Parishes of Rapides, St. Landry, now Evangeline, and Calcasieu, now Allen Parish. After the death of Dr. Hawkins, his widow, Mrs. Bella Butchee Hawkins, married John S. Huff, who died in the year 1922, from which marriage no children were born. Sometime in the year 1928, Mrs. Bella Butchee Huff was united in marriage to Wesley W. Maddox, one of the plaintiffs in this suit, no children being born from this marriage. On October 15, 1931, Mrs. Maddox transferred three tracts of the land to her sister, Jerushia Butchee, a femme sole, by deed for a recited consideration of $600. Jerushia Butchee died a short time after the lands were deeded to her. On March 30, 1936, the other heirs of Jerushia Butchee deeded their interests in the three tracts of land to Mrs. Maddox for a recited consideration of $100. Mrs. Bella Butchee Maddox died on March 22, 1941, leaving no ascendants nor descendants. On September 18, 1941, her heirs, her brothers, sisters, nieces and nephews, the defendants herein, petitioned the court to be recognized as sole and only surviving heirs of the deceased Mrs. Maddox; to be sent into possession of the real estate belonging to her estate, being part of the real estate acquired by her on March 24, 1910 in the compromise agreement and act of partition with the heirs of Dr. Hawkins; and to be granted a partition of the property by licitation.

By judgment of the lower court, the heirs were sent into possession of the

property as owners, and the property was ordered sold to effect a partition.

After the property was advertised to be sold at public sale to effect the partition, the plaintiffs instituted the present suit in which they seek to restrain the sale and have the judgment of partition annulled on the following grounds:

1. "That the deceased left a last Will and Testament, reading as follows, to-wit:

" 'March 3, 1941'

" 'At my Death I donate and bequeath all the property I then own to my husband Wesley Maddox after his death it is to go to my great niece Johnnie Tilley'

"(signed) 'Bella B. Maddox' ".

2. "That three (3) parcels of the land described in said Judgment of partition of Sept. 22nd, 1941, was acquired by Bella B. Maddox during the existence of the community, which existed between herself and her husband, Wesley W. Maddox."

3. "That the husband Wesley W. Maddox, is poor and his wife died rich, and that he therefore 'inherited' the marital fourth under C.C. art. 2382."

4. "That J. C. Nance, Trustee, one of the plaintiffs and appellants, was owner of one-half of all of the minerals in said six (6) items of real estate, ordered partitioned, having acquired the same on February 28th, 1940, and was not made a party to said partition suit."

The plaintiffs contend that the ruling of the trial court, refusing to admit the purported will in evidence, is erroneous. The lower court refused to consider the will be-

cause the plaintiffs failed to allege that the purported will had been admitted to probate and ordered executed, and on the further ground, that in fact it had not been probated and ordered executed.

Article 1644 of the Revised Civil Code provides: "No testament can have effect, unless it has been presented to the judge of the parish in which the succession is opened; the judge shall order the execution of the testament after its being opened, and proved, in the cases prescribed by law."

■ In the case of Succession of Dambly, 191 La. 500, 186 So. 7, 12, this court stated: "It has been repeatedly held by this court that a will has no effect until probated and ordered to be executed by a competent court. See: Vidal's Heirs v. Duplantier, 7 La. 37, 45; Stewart's Curator v. Row, 10 La. 530; Marcos v. Barcas, 5 La.Ann. 265; Heirs of Landry v. Heirs of Duaron, 5 La.Ann. 612; Aubert v. Aubert, 6 La.Ann. 104; Lucas v. Brooks, 23 La.Ann. 117, 126; Sprowl v. Lockett, 109 La. 894, 33 So. 911; Succession of McDermott, 136 La. 80, 66 So. 546."

■■ The record shows that no effort was made to probate the purported will. The plaintiffs, Wesley W. Maddox and Johnnie Tilley, have no muniment of title except that claimed under the purported will. We do not believe, from the jurisprudence of this State, that they could be vested with any interest in the property until the will was probated and executed. However, be that as it may, these plaintiffs would be in no better position if the purported will was admitted in evidence and given effect, for the reason that it shows on its face it could have no legal standing because it contains a prohibited substitution.

Article 1520 of the Revised Civil Code provides:

"Substitutions and fidei commissa are and remain prohibited.

"Every disposition by which the donee, the heir, or legatee is charged to preserve for or to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee.

"In consequence of this article the trebellianic portion of the civil law, that is to say, the portion of the property of the testator, which the instituted heir had a right to detain, when he was charged with a fidei commissa or fiduciary bequest is no longer a part of our law."

■■ We had occasion in the case of Succession of Heft, 163 La. 467, 112 So. 301, 302, to discuss prohibited substitutions forbidden by Article 1520 of the Revised Civil Code, and we stated: "It is well settled that a testamentary disposition containing the stipulation that at the death of the legatee the property shall go to another legatee named in the will is not the same thing as the giving of the usufruct to the one and the ownership of the property to the other legatee. Marshall v. Pearce, 34 La.Ann. [557], 561; Succession of Ledbetter, 147 La. 771, 85 So. 908; Succession of Hunter, 159 La. 492, 105 So. 596. In order that a testament may convey the usufruct of property to one legatee and the ownership of it to another, the title to the

property itself to the one legatee, as well as the usufruct to the other legatee, must be transmitted directly from the testator and invest the title in the one legatee and the usufruct in the other immediately at the death of the testator. Marshall v. Pearce, 34 La.Ann. [557], 561; Succession of Auld, 44 La.Ann. 591, 10 So. 877; Benson v. Cosine, 44 La.Ann. [913], 914, 11 So. 459; Succession of Stephens, 45 La.Ann. [962], 964, 13 So. 197; In re Billis' Will, 122 La. [539], 543, 47 So. 884, 129 Am.St. Rep. 355; Succession of Hall, 141 La. 860, 75 So. 802. A bequest of property in trust to one legatee to be by him transmitted to another is a fidei commissum. Dufour v. Deresheid, 110 La. 344, 34 So. 469; Succession of Reilly, 136 La. 347, 67 So. 27; Succession of Percival, 137 La. 203, 68 So. 409; Succession of Hall, 141 La. 860, 75 So. 802. A bequest of property to one legatee with the stipulation and on the condition that at his death and without any act of conveyance from him it shall belong to another legatee named in the will is a prohibited substitution. Marshall v. Pearce, 34 La.Ann. [557], 561; Succession of Ledbetter, 147 La. 771, 85 So. 908; Succession of Hunter, 159 La. 492, 105 So. 596. Fidei Commissa and prohibited substitutions—forbidden by article 1520 of the Civil Code—are essentially different from the giving of the usufruct to one legatee and the ownership to another, which is expressly permitted by article 1522 of the Civil Code."

The doctrine has been cited with approval in the Succession of Feitel, 176 La. 543, 146 So. 145, and Succession of Blossom, 194 La. 635, 194 So. 572.

■ Counsel for the plaintiffs contends that the parcels of land Mrs. Maddox deeded her sister, Jerushia Butchee, which were subsequently retransferred to her by the heirs of Jerushia Butchee, after her death, belong to the community existing between Wesley W. Maddox and Mrs. Maddox, deceased.

It appears from the evidence that Mrs. Maddox and her husband, Wesley W. Maddox, were indebted to a merchant of Evangeline Parish, who was threatening suit against Mrs. Maddox; that Mrs. Maddox deeded the property to Jerushia Butchee, her sister, for a recited consideration of $600, when in truth and fact no consideration was ever paid; that the amount due the merchant was subsequently paid; that at the time Jerushia Butchee died, the property was still in her name; that thereafter, Wesley W. Maddox and Mrs. Maddox informed the Butchee heirs that the property had been transferred to Jerushia Butchee without any consideration in order to prevent the creditor from seizing and selling the lands to satisfy the debt; and that after the circumstances were explained to the heirs of Jerushia Butchee, they deeded the property back to Mrs. Maddox for a recited consideration of $100 when in truth and fact, no consideration whatever was paid.

The evidence shows that no community funds were used to purchase the lands. Moreover, the transfer of the property by Mrs. Maddox to Miss Jerushia Butchee was a simulation pure and simple.

■ In the case of Hibernia Bank & Trust Co. v. Louisiana Ave. Realty Co.,

143 La. 962, 79 So. 554, 556, it is stated: "A simulated contract is one which, though clothed in concrete form, has no existence in fact and is only a myth. It may at any time and at the demand of any party in interest be declared a sham, and it may even be ignored by creditors of the apparent vendor."

This doctrine has been cited with approval in the case of Citizens' Bank & Trust Co. v. Willis, 183 La. 127, 162 So. 822.

Wesley W. Maddox, one of the plaintiffs, contends that the holding of the trial court that his right to the marital fourth, as granted under Article 2382 of the Revised Civil Code, had prescribed under the provisions of Article 3275 of the Revised Civil Code is erroneous.

Article 2382 of the Revised Civil Code provides: "When the wife has not brought any dowry, or when what she brought as a dowry is inconsiderable with respect to the condition of the husband, if either the husband or the wife die rich, leaving the survivor in necessitous circumstances, the latter has a right to take out of the succession of the deceased what is called the marital portion; that is, the fourth of the succession in full property, if there be no children, * * *".

Article 3275 of the Revised Civil Code reads as follows:

"Creditors and legatees who demand a partition of the patrimony of the deceased, in conformity with the provisions contained in the third section of the eighth chapter of the title: of successions, pre-

serve their privilege, as against the heirs or representatives of the deceased, on the immovables of the succession, only by recording the evidences of their claims against the succession within three months after it is opened.

"Before the expiration of this time no mortgage can be enforced against the property, nor any alienation be made by the heirs or representatives of the deceased, to the injury of the creditors of the succession."

The trial court, as shown by its written reasons, was under the impression that the right of Wesley W. Maddox to claim the marital fourth had prescribed for the reason that he had failed to record it against the succession within three months after the death of the deceased, Mrs. Maddox. This impression was founded on the ground that the claimant of a marital fourth is a creditor of the estate.

■ The surviving spouse's right to take the marital fourth is not such as to create the relationship of creditor and debtor. Succession of Rogge, 50 La.Ann. 1220, 23 So. 933.

It is a gift or bounty bestowed by law in favor of the surviving spouse left in penurious circumstances. Succession of Justus, 44 La.Ann. 721, 11 So. 95, and Succession of Rogge, supra.

■ Article 3275 of the Revised Civil Code applies to creditors and legatees, and its provisions cannot be extended so as to include one claiming a marital fourth. Consequently, the codal provision is not applicable.

 The surviving spouse can assert his right to the marital fourth by way of opposition to the final account of an administrator of a succession. Succession of Tacon, 186 La. 418, 172 So. 513; Succession of Andrus, 187 La. 931, 175 So. 624.

It may be asserted after liquidation of the estate. Harrell v. Harrell, 17 La. 374; Duriaux v. Doiron, 9 Rob. 101.

It may be asserted even after the property of the succession has been received by the heirs. Duriaux v. Doiron, supra.

The judgment of the trial court in so far as it holds that the right of Wesley W. Maddox to assert his claim to the marital fourth is prescribed is incorrect and should be reversed. The case should be remanded to be heard on the merits as to this claim.

The plaintiff J. C. Nance, trustee, contends that the judgment of partition should be annulled for the reason that he, the owner of one-half the minerals in and under the lands, was not made a party to the partition suit. In support of this contention, he cites Act No. 96 of 1938, Act No. 205 of 1938 and Act No. 336 of 1940.

From the record, it appears that Mrs. Maddox transferred to J. C. Nance, trustee, one-half of the oil, gas and other minerals in and under the lands involved in this suit by private act on February 28, 1940. The mineral deed was not recorded until December 5, 1941, three days before the present suit was filed and two months and thirteen days after the rendition of the partition judgment sought to be annulled. In all probability, the defendants did not know at the time they asked for the partition that there was an outstanding unrecorded mineral deed in favor of J. C. Nance.

The judgment ordering the partition contains these provisions:

"It is Further Ordered, Adjudged and Decreed, That said property be sold, as aforesaid, subject to any valid sale or mineral royalty affecting any of said lands, which may have been made by Bella Butchee Maddox prior to her death, and which sales of mineral royalty, if any are of record in the Parish where the lands affected thereby are located, and

"That said property be sold subject to all of the obligations of any outstanding Mineral Lease, or Leases affecting any of said property, which Mineral Lease or Leases may have been executed by Bella Butchee Maddox prior to her death, the purchaser to be subrogated to all of the rights and obligations of the Lessor in any such Mineral Lease, or Leases."

In its reasons for judgment in the present suit, the lower court states in effect that the plaintiff J. C. Nance would have no interest in enjoining or prohibiting the co-owners of the property from proceeding with the partition, for the reason that whatever mineral rights he has in the lands have been preserved in the judgment ordering the sale of the property.

 Without the lower court's interpretation of its own judgment, there might have been some question whether mineral owners were protected when the judgment uses the words, mineral royalty. There

is a vast distinction between a mineral royalty and a mineral interest. However, since the lower court has interpreted its own judgment, which is an ex parte judgment, so as to protect the plaintiff Nance's mineral rights, we do not see how the plaintiff Nance could suffer any injury. The sale must be made under the supervision of and approved by the lower court. Furthermore, the lower court has indicated in its opinion in the present case that the sale must be made subject to the plaintiff's servitude.

There could be no reason to set the sale aside under the circumstances in this case, where in all probability it was not known that the plaintiff had an outstanding unrecorded mineral deed at the time the sale was ordered, simply because the plaintiff was not made a party to the suit. He is presently before the court, and the sale has not yet been made. He could not gain any greater rights if he had been cited at the beginning of the partition suit. The statutes which he cited in support of his contention could not under any interpretation give him any more rights than he has been granted by the trial court. The only interest that he could have is to see that his servitude is recognized and protected. This has been done. We, therefore, see no reason to disturb the judgment of the lower court in this respect.

Counsel for the plaintiffs takes the position that the trial of the present case was not a trial on the merits but simply the trial of a rule for injunction, and that no definitive judgment could have been rendered in the case. He suggests

that the defendants had to be cited before the case could be tried on its merits. We are at a loss to see how the plaintiffs would have any complaint to the lack of citation to the defendants. The defendants appeared and answered on the merits in this case. The case was set for trial on its merits at the request of counsel for the plaintiffs. The case was taken up and tried on its merits, pursuant to the previous fixing. We see no merit in this contention.

For the reasons assigned, the judgment of the lower court is reversed and set aside in so far as it affects the right of Wesley W. Maddox to assert his claim for the marital fourth. As thus amended, the judgment is affirmed. The case is now ordered remanded to the lower court for the trial on the merits of the claim of Wesley W. Maddox to the marital fourth.

ODOM, J., absent.